IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 3:17-CR-481-WKW-1 |
| | ) | [WO] |
| JAMAL AIKEEM HUTCHINSON | ) | |

## **MEMORANDUM OPINION AND ORDER**

Defendant Jamal Hutchinson pleaded guilty to being a felon in possession of a firearm. He is now before the court for sentencing. Hutchinson does not dispute that he has three prior felony convictions. Nor does he dispute that on April 5, 2017, police officers found a loaded pistol in his waistband. The question before the court is whether he possessed any other firearms — and if so, under what circumstances.

The court finds that Hutchinson possessed three other firearms, including two that he used to commit armed robbery. On September 1, 2014, Hutchinson robbed a gas station at gunpoint. During that robbery, he pistol-whipped the pregnant store clerk. Sometime between March 1, 2017, and April 4, 2017, he possessed a rifle capable of accepting a large-capacity magazine. And on April 17, 2017, he committed another armed robbery, once again pistol-whipping the victim. Based on these findings, the government's objection to the Presentence Investigation Report is due to be sustained. Hutchinson's objection is due to be overruled.

## I. LEGAL STANDARDS

Though the government bears the burden of proof at sentencing, it need not establish a fact beyond a reasonable doubt. Rather, it is enough to prove a fact by a preponderance of the evidence. *United States v. Maddox*, 803 F.3d 1215, 1220 (11th Cir. 2015) (per curiam). So if it is more likely than not that Hutchinson committed a crime, the court may take that crime into account. *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam).

The Federal Rules of Evidence do not formally apply at sentencing. Fed. R. Evid. 1101(d)(3). Rather, the court "may consider any evidence, regardless of its admissibility at trial, . . . provided that (1) the evidence has sufficient indicia of reliability, (2) the court makes explicit findings of fact as to credibility, and (3) the defendant has an opportunity to rebut the evidence." *United States v. Hernandez*, 906 F.3d 1367, 1369 (11th Cir. 2018). This includes reliable hearsay. *United States v. Zlatogur*, 271 F.3d 1025, 1031 (11th Cir. 2001) (per curiam).

## II. PROCEDURAL HISTORY

In November 2017, Hutchinson and three others were named in a four-count indictment. (Doc. # 1.) Hutchinson, Marquavious Howard, and Jamal Macon were all charged with robbery (Count One) and with brandishing a firearm during a crime of violence (Count Two). Hutchinson was charged with being a felon in possession of a firearm (Count Three). And Hutchinson and Malik Williams were both charged

with discharging a firearm during a crime of violence (Count Four).  The government later dismissed Counts One, Two, and Four.  (Docs. # 65, 135.)  Hutchinson pleaded guilty to Count Three.  (Doc. # 128.)  There is no plea agreement.

Before sentencing, a probation officer prepared a Presentence Investigation Report (PSR).  The government filed a sentencing memorandum and exhibits.  (Doc. # 153.)  So did Hutchinson.  (Docs. # 154, 156.)  Both parties object to the PSR.  The government objects that the PSR fails to hold Hutchinson responsible for possessing three or more firearms.  Hutchinson objects that the PSR holds him responsible for using or possessing a firearm in connection with another felony.

The court held a hearing on January 17, 2019.  (Docs. # 144, 157, 158.)  The government called three witnesses at that hearing.  One was Investigator Mitchell Allen of the Lee County, Alabama, Sheriff's Office.  The other two were Detective Dustin Holt and Sergeant Michael Creighton, both of the Auburn, Alabama, Police Division.  The government submitted four videos, two audio recordings, and thirteen documents (including photos) into evidence.  Hutchinson called Orlando Gonzalez, an investigator for the Federal Defenders Office, as a fact witness.  Hutchinson also submitted three documents into evidence.[1]

---

[1] Hutchinson's sister and grandmother testified as character witnesses.  (Doc. # 158, at 107–110.)  The court also received copies of Hutchinson's medical records (Doc. # 156, at 11–63) and psychological evaluation (Doc. # 156, at 4–10).  This evidence is not relevant to the objections to the PSR.  The court will, of course, consider it when imposing Hutchinson's sentence.

## III. FINDINGS OF FACT

Four facts resolve the objections to the PSR. First, Hutchinson used a pistol to commit armed robbery on September 1, 2014. Second, sometime between March 1, 2017, and April 4, 2017, he possessed a rifle that could accept a large-capacity magazine. Third, he possessed a pistol on April 5, 2017. And fourth, he used a pistol to commit armed robbery on April 17, 2017. The government has proven each of these facts by a preponderance of the evidence.[2]

### A. **Hutchinson committed an armed robbery on September 1, 2014.**

On September 1, 2014, two men robbed a gas station in Auburn, Alabama, at gunpoint. Surveillance camera footage shows that both robbers brandished pistols and wore cloth masks. One robber wore a royal blue jacket; the other wore a navy blue hoodie. The robber in the royal blue jacket jumped the counter, pointed his gun at the store clerk's head, shoved the clerk to her knees, and ordered her to open the cash register. The clerk was six to eight months pregnant at the time. The clerk complied with the robbers' instructions, but the robber in the royal blue jacket still hit her head with his pistol. That blow caused a deep gash that sent the clerk to the hospital for either stitches or staples. After emptying the cash register, the robbers fled on foot. (Exhibit A-1; Doc. # 158, at 36–37, 47.)

---

[2] The court also finds that Investigator Mitchell Allen, Detective Dustin Holt, Sergeant Michael Creighton, and Investigator Orlando Gonzalez are all credible and reliable witnesses.

Hutchinson was the robber in the royal blue jacket, and Marquavious "Quay" Howard was the robber in the navy blue hoodie. This finding is based on statements given to Detective Holt and on a proffer interview.

1. *Cordarious Wright implicated Hutchinson.*

In February 2015, Cordarious Wright, one of Hutchinson's acquaintances, was under arrest in Auburn. Detective Holt took the opportunity to ask Wright about the September 2014 robbery. Holt did not offer or promise Wright anything in return for making a statement. (Doc. # 158, at 37–40, 62–65.)

Wright gave a statement identifying Hutchinson as the robber in the royal blue jacket and Quay Howard as the robber in the navy blue hoodie. Wright also said he was with Hutchinson and Howard when a television news station aired a surveillance photo of the robbers. Implicitly admitting their guilt, Hutchinson and Howard stated, "They can't tell who we are." (Doc. # 157-3.)

Hutchinson challenges Wright's statement. In an April 2015 affidavit, a man named Remus Menifield said that Wright admitted to framing Hutchinson. (Doc. # 157-13.) And according to a May 2015 affidavit by a man named Craig Stinson, Wright "never [saw] Jamal Hutchinson . . . commit any sort of crime." (Doc. # 157-11.) Both Menifield and Stinson claim that Wright implicated Hutchinson to help his own chances of getting out of jail and to get revenge on Hutchinson. These affidavits are not due much weight, however. Though they appear to be notarized,

5

there is no evidence about why or how Menifield and Stinson signed their affidavits (such as whether they were threatened with or promised something). Menifield and Stinson did not deliver their affidavits to anyone who testified at the hearing. There is also no evidence that Wright committed the robbery. Finally, Stinson does not claim Wright lied to the police about Hutchinson — only that Wright said he did not *witness* a crime and that Wright made his statement for selfish reasons.[3]

### 2. *Marquise Graves implicated Hutchinson.*

In March 2015, Detective Holt asked another of Hutchinson's acquaintances, Marquise Graves, about the robbery. At the time, Graves was incarcerated and was being investigated for a crime. But Holt did not offer or promise Graves anything in return for making a statement. Graves made a statement, which Holt wrote and Graves signed. (Doc. # 158, at 40–42, 65–66, 98.)

Graves told Holt that Hutchinson was the robber in the royal blue jacket and that Quay Howard was the other robber. Graves reported that Hutchinson used a 9mm pistol and that Howard used a .22-caliber revolver. Graves also implicated his own half-brother, Jamal Macon (nicknamed "Tweety"). Graves said that "Tweety" drove Hutchinson and Howard to the gas station and was supposed to be the getaway driver. (Doc. # 157-2; Doc. # 158, at 41–42, 105–07.)

---

[3] The same notary who witnessed Menifield's and Stinson's affidavits also notarized an affidavit by Johnny Buchannon. According to Buchannon, Wright *denied* implicating Hutchinson — the opposite of framing Hutchinson. (Doc. # 157-12.)

6

In a later interview with Investigator Gonzalez, Graves recanted his statement. Graves told Gonzalez that Holt promised not to bring a robbery charge against him, leading Graves to invent a statement based on rumor and Holt's own words. (Doc. # 158, at 98–100.) But the fact that Gonzalez is credible does not mean Graves told Gonzalez the truth. And the fact that Graves recanted does not necessarily mean that his first statement was false. Holt credibly testified that he did not induce Graves to give a statement by promising to bring or drop a robbery charge against him. Moreover, Graves might have recanted to help his half-brother, Jamal Macon. After all, Graves was the first to implicate Macon; Holt did not know about Macon's involvement until Graves mentioned it. Graves's statement implicating Macon is supported by the fact that Macon later confessed in a proffer to the United States Attorney. (Doc. # 157-5, at 1–2; Doc. # 158, at 104–06.)

### 3. *Remus Menifield implicated Hutchinson.*

Remus Menifield gave a statement to Detective Holt in April 2016. Menifield had been in jail with Hutchinson, and Holt asked about Hutchinson and the robbery. Though Menifield faced criminal charges at the time, Holt did not offer or promise him anything in exchange for his statement. Nor did Holt suggest facts to Menifield. (Doc. # 158, at 42–45, 66–69.)

In his statement, Menifield reported that Hutchinson confessed to the robbery. Hutchinson told Menifield that Quay Howard was the other robber and that the two

7

men used t-shirts as masks. Hutchinson said that he jumped over the counter and hit the clerk "in the top of her head" with his pistol, causing the clerk's head to "split open." (Doc. # 157-4.)

### 4. *Jamal Macon implicated Hutchinson.*

In December 2017, Jamal Macon ("Tweety") entered into a proffer agreement with the United States Attorney for this district. Macon was represented by counsel. In the subsequent proffer interview, Macon admitted that on September 1, 2014, he drove Hutchinson and Howard to the gas station. He knew Hutchinson and Howard were going to rob the store and that both men were armed. Macon recalled that one gun was a .22-caliber revolver and that the other was a semiautomatic pistol. Though Macon was supposed to be the getaway driver, he left during the robbery. Hutchinson later told Macon that they stole $200. (Doc. # 157-5, at 1–2; Doc. # 158, at 46–48, 69.)

### 5. *Though there is reason to doubt some of these statements, it is more likely than not that Hutchinson committed the crime.*

Hutchinson argues that, based on the evidence above, the government fails to meet its burden of proof. In addition to introducing the evidence against Wright and Graves, Hutchinson points out reasons to discount the government's evidence. One reason is that Wright, Graves, Menifield, and Macon have criminal records. Another is that those four men gave their statements to Holt while in custody and while facing criminal charges. A third is that Menifield has previously reported on other inmates.

A fourth is that Alabama did not prosecute Hutchinson for the robbery because the state did not believe it could prove his guilt beyond a reasonable doubt. (Doc. # 158, at 45, 61–63, 65, 67–70.)

The court has considered those arguments. But given the evidence as a whole, the court finds it is more likely than not that Hutchinson committed armed robbery on September 1, 2014. Indeed, the court would make this finding even if Wright's and Graves's statements were entitled to no weight whatsoever.

**B.    Sometime between March 1, 2017, and April 4, 2017, Hutchinson possessed a rifle capable of accepting a large-capacity magazine.**

On April 6, 2017, Sergeant Creighton found a Facebook video of Hutchinson shooting an AR-15-style rifle.[4] Hutchinson does not dispute that he is in the video. Thus the only question is when the video was filmed. (Exhibit A-2; Doc. # 158, at 73–76, 116–17.)

Sergeant Creighton found the Facebook video while investigating the April 2, 2017, murder of Tyquavious Jackson. Jackson was shot nine times, and there were multiple .223-caliber shell casings at the murder scene. On April 4, 2017 (two days after the murder), Kendrevious Dumas confessed to the Auburn Police that he killed Jackson. Dumas told officers that he bought the murder weapon — an AK-47-style

---

[4] An AR-15 can usually accept a magazine that holds more than fifteen rounds. The video also appears to show Hutchinson firing more than fifteen rounds without reloading. *See* U.S.S.G. § 2K2.1 comment. n.2 (defining "large capacity magazine" as one that can accept "more than 15 rounds"); *United States v. Langford*, 533 F. App'x 948, 951–52 (11th Cir. 2013) (per curiam).

9

pistol — at one of two pawn shops. Records from one of the shops reveal that Dumas bought a 5.56×45mm pistol on March 1, 2017. (A firearm chambered in 5.56×45mm can shoot .223-caliber rounds.) Though not "rare," an AK-47-style pistol is not an ordinary weapon. The one Dumas purchased is the only one that Sergeant Creighton has ever seen chambered in 5.56×45mm. (Doc. # 157-9, at 1–4; Doc. # 158, at 79–85, 88, 91.)

This information is relevant because Kendrevious Dumas and an AK-47-style pistol are in the Facebook video with Hutchinson. A car that matches the description of Dumas's car is also in the video. It is no surprise that both Hutchinson and Dumas are together in the video; they were familiar with each other (Doc. # 157-9, at 5; Doc. # 158, at 75, 77, 83, 87–91.)

Based on this evidence, it is more likely than not that the Facebook video was filmed between March 1, 2017, and April 4, 2017 — between when Dumas bought an AK-47-style pistol and when Dumas surrendered himself to the police. Although there is no evidence linking the serial number of the AK-47-style pistol in the video to the weapon used to kill Jackson (Doc. # 158, at 87), neither is there evidence that Hutchinson knew anyone else with an AK-47-style pistol. Finally, Hutchinson became a felon when he was nineteen, and he appears to be an adult in the video.

C. **Hutchinson possessed a pistol on April 5, 2017.**

On April 5, 2017, Detective Holt was investigating Jackson's murder, and he

thought Hutchinson might have been a witness. (He was.) Holt and another officer went looking for Hutchinson, and they found him leaving an apartment building. When he saw Holt, Hutchinson announced, "I got a pistol on me." The officers then found a loaded .45-caliber pistol in his waistband. The officers arrested Hutchinson and seized his pistol. (PSR ¶ 7; Doc. # 158, at 48–49.)

**D.    Hutchinson committed an armed robbery on April 17, 2017.**

On April 17, 2017, the Lee County Sheriff's Office responded to a call that a man had been shot. Investigator Allen was first on the scene. The victim, Donnell George, passed out from blood loss less than two minutes after Allen arrived. Before passing out, George told Allen that he had been shot by Malik Williams, who was with a man whose name George did not know.[5] George was taken by helicopter to Georgia. He had been shot once in the groin, and the bullet barely missed an artery. (Doc. # 157-6, at 1–2; Doc. # 157-7; Doc. # 158, at 12–16, 25–28.)

When Allen interviewed George at the hospital the next day, a better picture of what happened emerged. George and his roommate, Devonte Rush, had been at their house playing dominoes with Williams and a man whose nickname was "Red." When Rush left to run an errand, Williams and "Red" drew pistols and forced George into his bedroom. "Red" pistol-whipped George. Then Williams shot George in the

---

[5] At this point, George said he had been shot in a car and that the shooter had no apparent motive. (Doc. # 158, at 27–28.) This part of his story would change.

11

groin. The robbers took off with some cash, two pairs of shoes, two cellphones, and a tablet computer. George ran to a neighbor's house, and the neighbor called 911. (Doc. # 157-6, at 2–3; Doc. # 158, at 9–16, 32.)

Investigator Allen soon learned that Hutchinson's nickname is "Red." Allen asked Detective Holt if he knew anyone with the nickname "Red," and Holt thought of Hutchinson right away. In fact, Hutchinson is the only person Holt knows by that nickname. (Doc. # 158, at 16–17, 48.) Sergeant Creighton and Jamal Macon also know Hutchinson as "Red." (Doc. # 158, at 85; Doc. # 157-5, at 2.)

So two days after the robbery, a six-photograph lineup was shown to George and Rush. Rush identified Hutchinson and Williams as the men who had been with George when Rush left to run an errand. George identified Hutchinson as the robber nicknamed "Red," though only with "fifty-percent" certainty. (Doc. # 157-6, at 3; Doc. # 158, at 17–18, 28–29.) Allen also went to George and Rush's house two days after the robbery. Allen did not see any dominoes or recover Hutchinson's DNA or fingerprints, but he did find a .40-caliber shell casing in George's bedroom. (Doc. # 157-6, at 3; Doc. # 158, at 31–32.)

Arrest warrants were issued for Hutchinson and Williams on April 19, 2017. Williams was arrested on May 2, 2017. The serial number on his shoes matched the serial number of shoes stolen from George. Also on May 2, 2017, Hutchinson called George and offered him $1,500 to drop the charges. Hutchinson insisted that he did

12

not shoot George, but he did not deny involvement in the robbery. Hutchinson was arrested on May 9, 2017, after an attempt to elude officers. (Exhibits A-3, A-4; Doc. # 157-6, at 4–5; Doc. # 158, at 19–23.)

Based on this evidence, it is more likely than not that Hutchinson committed the April 17 robbery. To be sure, what George said before he passed out differs from the statement he gave to Investigator Allen in the hospital. There is also no DNA or fingerprint evidence. Allen did not see dominoes when he was at George's house two days after the shooting. And when George identified Hutchinson in the photo lineup, he was only fifty-percent certain that Hutchinson was one of the robbers. But these points do not change the court's finding. George made his first statement just before he passed out from blood loss. Hutchinson offered to pay George $1,500 to drop the charges. Hutchinson's nickname is "Red." Rush identified Hutchinson in a photo lineup. And there is no evidence that George is biased against Hutchinson. In other words, the weight of the evidence as a whole supports the government.[6]

## IV. DISCUSSION

Both parties object to how the PSR calculates Hutchinson's offense level. The government objects that the PSR fails to hold Hutchinson accountable for possessing

---

[6] Though it is not relevant to any objections to the PSR, the court finds that the Facebook page for "Justa Yrn" is, in fact, Hutchinson's pseudonymous Facebook page. Photos on the page identify him as the page's owner. (Doc. # 157-8, at 1, 3; Doc. # 158, at 52–54.) The court also finds that posts on the page use gang symbols and seemingly endorse violence. (Doc. # 157-8, at 1–2; Doc. # 158, at 57–59.)

three or more firearms.  Hutchinson objects that it holds him responsible for using or possessing a firearm in connection with another felony.  Based on the facts above, the government's objection is due to be sustained and Hutchinson's objection is due to be overruled.

A. **Hutchinson is due to receive a two-level enhancement for possessing three to seven firearms.**

Under § 2K2.1(b)(1)(A) of the Guidelines, Hutchinson must receive a two-level enhancement for possessing between three and seven firearms.  This is because all three guns that he possessed in 2017 were "part of the same course of conduct."  U.S.S.G. § 1B1.3(a)(2); *see United States v. Williams*, 709 F. App'x 988, 990 (11th Cir. 2017) (per curiam).

In determining whether Hutchinson's actions were part of the same course of conduct, the court looks at three factors: "similarity, regularity, and temporal proximity."  *United States v. Maxwell*, 34 F.3d 1006, 1011 (11th Cir. 1994) (cleaned up).  The point is to determine whether his actions "are sufficiently connected or related to each other."  U.S.S.G. § 1B1.3 comment. n.5(B)(ii).  The three firearms that Hutchinson possessed in 2017 meet all three factors.

First, there is a high degree of similarity.  Hutchinson is charged with being a felon in possession of a firearm.  He possessed a firearm three times in 2017, years after he became a felon.  On all three occasions, he was out in the community.  His gun was loaded at least twice.  *See Williams*, 709 F. App'x at 990 (finding similarity

when the defendant "possessed all three firearms as a felon").

Second, there is regularity. Possessing a firearm was apparently a normal part of Hutchinson's life. Hutchinson seems to have fun in the Facebook video. On April 5, 2017, Hutchinson had a pistol in his waistband while he was in the community. He was arrested for that offense. Yet less than two weeks later, he had a different pistol with him when he went to George and Rush's house. *See United States v. Phillips*, 516 F.3d 479, 484–85 (6th Cir. 2008) (noting when a defendant possesses a firearm after an arrest for possessing a firearm, it "suggests . . . he may have carried firearms regularly").

Finally, all three possessions in 2017 happened within, at most, six-and-a-half weeks — from March 1, 2017, to April 17, 2017. That span is short enough to render the possessions part of the same course of conduct. *See United States v. Spencer*, 748 F. App'x 507, 509 (4th Cir. 2018) (per curiam) (affirming an enhancement for number of firearms when the defendant possessed three firearms on two occasions in a four-month period); *United States v. Fausphoul*, 232 F. App'x 400, 401 (5th Cir. 2007) (per curiam) (same; seventeen firearms on three occasions in a fourteen-month period); *United States v. Brummett*, 355 F.3d 343, 345 (5th Cir. 2003) (per curiam) (same; four firearms on three occasions in a nine-month period).

Because the three possessions in 2017 are part of the same course of conduct, it does not matter whether Hutchinson possessed a firearm in connection with the

September 1, 2014 robbery. The sentencing enhancement is the same whether he possessed three or four firearms. *See* U.S.S.G. § 2K2.1(b)(1)(A) (adding two levels if the offense involved three to seven firearms).

**B.     Hutchinson is due to receive a four-level enhancement for possessing a firearm in connection with another felony.**

The PSR gives Hutchinson a four-level enhancement for using a firearm to rob Donnell George. *See* U.S.S.G. § 2K2.1(b)(6)(B) ("If the defendant . . . used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels."). Hutchinson objects to that enhancement. But since he both possessed *and* used a pistol to rob George, his objection is due to be overruled.

## V.  CONCLUSION

For the reasons above, it is ORDERED that the government's objection to the Presentence Investigation Report is SUSTAINED and that Hutchinson's objection to the Presentence Investigation Report is OVERRULED.

DONE this 12th day of March, 2019.

/s/ W. Keith Watkins
UNITED STATES DISTRICT JUDGE